

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-19-2005

# Buchholz v. Mid W Intermediate

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-1460

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Buchholz v. Mid W Intermediate" (2005). *2005 Decisions.* Paper 1335.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/1335

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEAL
FOR THE THIRD CIRCUIT

No. 04-1460

RENEE BUCHHOLZ;
ROBERT BUCHHOLZ, her husband

v.

MIDWESTERN INTERMEDIATE UNIT IV; ANGELO PEZZUOLO;
THOMAS MAJERSKY; MONITEAU SCHOOL DISTRICT;
MICHAEL A. PANZA; ANTHONY MONTLEONE;
RICHARD CAVETT; CECELIA YAUGER;
DENNIS DURNELL; JACQULINE DURNELL, husband and wife

Renee Buchholz,

Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 01-cv-01801)
District Judge: Hon. Donetta W. Ambrose

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 5, 2005

BEFORE: BARRY, AMBRO and COWEN, Circuit Judges

(Filed: April 19, 2005)

OPINION

COWEN, Circuit Judge.

Renee Buchholz ("Buchholz" or "Plaintiff") appeals from the District Court's order of January 21, 2004, denying Plaintiff's motion for a new trial following a jury verdict in favor of Midwestern Intermediate Unit IV ("Intermediate Unit") and Thomas Majersky (collectively "Defendants"). Buchholz brought this action pursuant to 42 U.S.C. § 1983 on September 26, 2001, alleging that Defendants violated her substantive due process right to bodily integrity under the state created danger doctrine. The jury found Plaintiff's claims barred by the statute of limitations. On appeal, Plaintiff contends that (1) the District Court erred in instructing the jury on the statute of limitations for her § 1983 claims; and (2) the jury's verdict finding her claims barred by the statute of limitations was against the weight of the evidence. We have jurisdiction to review the final order of the District Court pursuant to 28 U.S.C. § 1291. We will affirm.

I.

As we write exclusively for the parties, we briefly review the pertinent facts. Intermediate Unit employed Plaintiff as a Licensed Professional Nurse ("LPN") in 1993. Among her responsibilities was providing care to special education children, including Ryan Durnell, a teen-aged, moderately mentally retarded Downs Syndrome child. Ryan commenced physical attacks on Plaintiff in the 1997-98 school year, and Plaintiff documented these attacks in reports submitted to the appropriate supervisor. She did not document any aggressive incidents in the 1998-99 school year.

2

Preceding the 1999-2000 school year, Ryan was assigned to the Life Skills Class at Moniteau High School, taught by Patricia Lewis. Plaintiff accepted a position as an LPN/Aide in the Life Skills classroom at Moniteau High School in August 1999. At the time of her interview for the position, Plaintiff advised Defendant Majersky of Ryan's disruptive behaviors. Mr. Majersky has been the Intermediate Unit's Supervisor of Special Education since 1991.

Plaintiff's responsibilities initially involved working with all the students in the Life Skills Class. As part of her duties, Plaintiff brought Ryan to the nurse's office for colostomy care. On September 10, 1999, September 13, 1999, and September 15, 1999, Ryan ran down the hallway. Plaintiff gave chase and physically apprehended Ryan. She filed incident reports on each occasion, and notified her supervisor, Mr. Majersky, who met with Mrs. Lewis and the school psychologist. On September 16, 1999, Ryan tackled Plaintiff to the ground and attempted to choke her with her ID necklace. He ran down the hallway into the metal shop, pushed Plaintiff into a wooden table and threw a long-handled wooden paper cutter across the room. In response, on September 17, 1999, Mr. Majersky met with and directed Plaintiff to write a report of the incident. He interviewed classroom staff and asked several staff members to prepare written statements. He told Plaintiff not to chase Ryan, as that exacerbated the situation. Several days later, Mrs. Lewis, the Life Skills teacher, presented Plaintiff with a schedule that she had prepared at the behest and approval of Mr. Majersky. This schedule, which was implemented on

September 21, 1999, required that Plaintiff work one-on-one with Ryan for the entirety of the school day. Mr. Majersky had the schedule prepared in an attempt to create a more pleasing environment for Ryan and strengthen Plaintiff's authority over him. Ryan's activities were scheduled in fifteen minute increments. Mr. Majersky directed Plaintiff to hold Ryan at the wrist at all times outside the classroom, to prevent injury in the event he "plopped," and commanded that Ryan not be permitted in the hallways when other students were present.

On September 23, 1999, upon learning that Ryan "plopped" and refused directives to get up two days earlier, Mr. Majersky recommended that Ryan be transported through the school by wheelchair, and further directed Mrs. Lewis to keep Ryan's activities in the classroom as much as possible.

On September 28, 1999, Plaintiff complained of numbness in her left side and neck and shoulder pain. She left work early. Plaintiff stayed home on September 29, 1999, and returned to work on September 30, 1999.

On September 30, 1999, Ryan attacked Plaintiff while they were in the nurse's office cleaning cots. Specifically, he smacked her head with his hand, grabbed her around her waist and lifted her up off her feet, and attempted to slam her body against the wall of the room. That an altercation between Ryan and Plaintiff occurred on that date is not disputed. Plaintiff has not worked for Intermediate Unit since September 30, 1999.

4

Plaintiff has since visited various doctors. She filed the instant complaint on September 26, 2001.

## A.

The District Court instructed the jury as follows:

> Defendants assert two affirmative defenses. And, again, as I told you earlier, these must be proven by the defendants by a preponderance of the evidence.
>
> One is the statute of limitations. The other is qualified immunity. The first, the statute of limitations, is a law that provides that a claim is barred if a plaintiff does not bring it within a prescribed period. In this case, the statute of limitations is two years. This case was brought -- it was filed in this Court on September 26, 2001. Thus if you find that none of defendants' conduct occurred after September 26, 1999, and if you find that plaintiff was not injured after September 26, 1999, then you must find that plaintiff's claims are barred by the statute of limitations.
>
> If you find, however, that at least one aspect of defendants' conduct occurred on or after September 26, 1999, then you must consider plaintiff's continuing violation theory. The continuing violation doctrine is an equitable exception to the timely filing requirement. Under the continuing violation theory, when a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period.
>
> Thus, to establish a continuing violation, plaintiff must prove by a preponderance of the evidence that at least one act occurred within the filing period, that is, on or after September 26, 1999, and that the action or inaction alleged was more than the occurrence of isolated or sporadic acts.

(App. at 19-20.)

Buchholz asserts that this instruction erroneously permitted the jury to find that all attacks perpetrated on her fell beyond the statute of limitations where, in fact, it was undisputed that the last attack occurred on September 30, 1999. She claims that the District Court should have instructed the jury that the statute of limitations did not bar her

claim to the extent it is based on this attack. Therefore, she argues, the jury could have properly been left to determine whether the earlier attacks levied against here were a part of a continuing course of violations.

We ordinarily evaluate jury instructions under an abuse of discretion standard. *United States v. Fishbach and Moore, Inc.*, 750 F.2d 1183, 1195 (3d Cir. 1984). A district court necessarily abuses its discretion, however, if its instruction "misstates the proper legal standard." As such, we exercise plenary review over a jury instruction challenged on that basis. *Hopp v. City of Pittsburgh*, 194 F.3d 434, 440 (3d Cir. 1999). Once the court has given an instruction, we must "determine whether the charge, taken as a whole and viewed in the light of the evidence, fairly and adequately submits the issues in the case to the jury." *Ayoub v. Spencer*, 550 F.2d 164, 167 (3d Cir. 1977). We will only reverse the district court if its instruction was capable of confusing and thereby misleading the jury. *Fishbach*, 750 F.2d at 1195. Consequently, we need not reverse if we conclude that the "jury would have reached the same result had it been instructed according to the correct legal standard." *Hopp*, 194 F.3d at 440 (internal quotation marks and citation omitted).

Plaintiff's § 1983 claim is subject to a two-year statute of limitations. *See Wilson v. Garcia*, 471 U.S. 261, 276-78 (1985) (holding that in actions brought under 42 U.S.C. § 1983, federal courts apply the state's statute of limitation for personal injury); *Smith v. City of Pittsburgh*, 764 F.2d 188, 192, 194 (3d Cir. 1985) (holding that a two-year statute

of limitations period applies to all § 1983 actions brought in Pennsylvania).  Federal law governs the accrual of a § 1983 claim.  *Montgomery v. De Simone, PTL*, 159 F.3d 120, 126 (3d Cir. 1998).  The limitations period begins to run from the time when "the plaintiff knows or has reason to know of the injury which is the basis of the section 1983 action." *Id.* (quoting *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 919 (3d Cir. 1991)).

The District Court's instructions below did not misstate the proper legal standard and adequately and clearly submitted the statute of limitations issues to the jury.  First, we observe that the District Court's instructions inured to Plaintiff's benefit.  Before finding that her § 1983 claims were barred, the jury was required to find (1) that none of defendants' conduct occurred after September 26, 1999, *and* (2) that Plaintiff was not injured after September 26, 1999.  The District Court's instructions operated to deem Plaintiff's claim timely so long as any element of her state created danger claim fell within the requisite limitations period.  Therefore, had the jury determined that Defendants' conduct caused Plaintiff to sustain injuries after September 26, 1999--the gravamen of Plaintiff's statute of limitations argument--they would have been compelled to find that Plaintiff's claims were timely.  As explained in Part IB., *infra*, the jury's verdict to the contrary is supported by sufficient evidence.

Next, the District Court's instructions accorded with the principle that a § 1983 claim accrues when a plaintiff knew or should have known of the basis for the action. *See Montgomery*, 159 F.3d at 126.  The elements of a substantive due process claim

7

predicated on a state created danger theory are (1) the harm ultimately caused was foreseeable and direct; (2) the state actors acted in willful disregard for the safety of the plaintiff; (3) there existed some relationship between the State and the plaintiff; and (4) the state actors used their authority to create an opportunity that otherwise would not have existed for the third party to cause harm. *Brown v. Penn. Dep't of Health Emergency Servs. Training Inst.*, 318 F.3d 473, 479 (3d Cir. 2003). Here, the facts relied upon to establish these elements were all present prior to September 26, 1999. To the extent Defendants engaged in any actionable conduct, it occurred on or before September 26, 1999. Ryan's attacks on Plaintiff likewise commenced before this date. As such, Plaintiff's § 1983 bodily integrity claim accrued over two years before she filed a complaint.

Last, turning to the District Court's instructions on continuing violations, Plaintiff's argument inappropriately conflates the actions of Defendants with the actions of a private actor, Ryan. Ryan's various attacks on Plaintiff represented the *result* or *effect* of Defendants' allegedly actionable conduct. As such, the attack of September 30, 1999, cannot serve as a basis for application of the continuing violations doctrine. Under the continuing violations doctrine, which operates as an "equitable exception to the timely filing requirement," *West v. Phila. Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995), a federal cause of action based upon the defendant's continuing conduct is timely if the last act evidencing that continuing practice falls within the appropriate limitations period. *See*

*Sameric Corp. of Del., Inc. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998).

Significantly, the focus of the inquiry is on the affirmative acts of the defendant. *Id*.;

*Cowell v. Palmer Township*, 263 F.3d 286, 293, 294 (3d Cir. 2001). Plaintiff premises

her continuing violations theory on the September 30th incident. She does not, however,

point to any affirmative acts or omissions of Defendants that occurred on this date, or

indeed, on any date on or after September 26, 1999. The existence of a continuing

violation hinges upon "the time [at which] the *discriminatory acts* [took place], not upon

the time at which the *consequences* of the acts became most painful." *Delaware State*

*College v. Ricks*, 449 U.S. 250, 258 (1980) (emphasis in original) (internal citations

omitted); *see also Ocean Acres Ltd. P'ship v. Dare County Bd. of Health*, 707 F.2d 103,

106 (4th Cir. 1983) ("A continuing violation is occasioned by continual unlawful acts, not

continual ill effects from an original violation."). In other words, Ryan's actions at most

constituted an "ill effect" of Defendants' actions, and thus alone cannot constitute a basis

for applying the continuing violations doctrine.

Accordingly, the District Court did not abuse its discretion or commit any

reversible error in instructing the jury.

B.

Plaintiff next contends that the jury verdict in favor of Defendants on the statute of

limitations issue is against the weight of the evidence, because it was undisputed that

Ryan assaulted her on September 30, 1999, which is a date falling within the preceding

9

two years of when she filed her complaint. Our review of the jury's verdict on this issue is limited to ascertaining whether sufficient evidence existed to support the jury's conclusion. *See Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 487 (3d Cir. 1985).

A review of the record reveals ample evidence from which the jury could reach the conclusion that Plaintiff's claims did not fall within the limitations period. That Defendants did not engage in any actionable wrong in the two years preceding September 26, 2001, is clearly evidenced in the record. In addition, sufficient evidence supports a finding that Plaintiff's injuries did not stem from the altercation of September 30, 1999. For example, Plaintiff did not indicate in her report submitted in connection with this incident that she suffered injury, even though the report specifically requested that information. An EEG and CAT scan of Plaintiff's brain conducted several days after September 30th were normal. Moreover, each of Plaintiff's medical witnesses testified on cross-examination that they could not attribute Plaintiff's injuries to any one of the September incidents. Indeed, the record contains evidence that Plaintiff experienced serious symptoms before any of the 1999 incidents with Ryan. In short, a jury could reasonably conclude on this record that Plaintiff's claims did not fall within the limitations period.

For the foregoing reasons, the judgment of the District Court entered on January 21, 2004, will be affirmed.